UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-24483-RNS

BETTY T. FERGUSON, *et al.*,

      Plaintiffs,

v.

MIAMI DOLPHINS, LTD., *et al.*,

      Defendants.

                                              /

## MOTION TO DISMISS COMPLAINT FOR INJUNCTIVE RELIEF

Defendants, Miami Dolphins, Ltd., South Florida Stadium LLC, RSE Ventures, LLC, Liberty Media Corporation, Formula One Management Limited, Formula One World Championship Limited, Miami-Dade County, Florida (the "County"), and Mayor Carlos Gimenez (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b) move to dismiss Plaintiffs' Complaint for Injunctive Relief ("Complaint" or "Compl.") [ECF No. 1], and state:

## I.      PRELIMINARY STATEMENT

For over two years, certain Defendants have been negotiating to hold an annual Formula 1 Grand Prix (the "Miami Grand Prix") at Hard Rock Stadium (the "Stadium"), a world-class sports complex in Miami Gardens at which "automotive racing" is an expressly permitted use under the applicable Stadium Zoning Ordinance.[1] *See* Compl. ¶ 148.

---

[1] The Stadium Zoning Ordinance is codified at §§ 33-450 through 33-463 of the Miami Dade County Code ("County Code") and §§ 34-601 through 34-614 of the City of Miami Gardens Code of Ordinances ("City Code"). Defendants contemporaneously filed a Request for Judicial Notice asking the Court to take judicial notice of the Stadium Zoning Ordinance and other pertinent Code provisions and related materials cited herein [ECF No. 34]. F.R.E. 201; *see also Vazzo v. City of Tampa*, 2018 WL 4610998, at *2 (M.D. Fla. Mar. 15, 2018).

Plaintiffs, however, do not want a Miami Grand Prix in Miami Gardens. They previously raised their concerns about a possible Formula 1 race at the Stadium during public hearings, in which they advocated for proposed legislation targeted at automotive racing. *See, e.g.*, Compl. ¶¶ 124, 132. That proposed legislation failed. Now, Plaintiffs ask this Court to circumvent the ordinary legislative and administrative processes and insert itself into a land use dispute.

Plaintiffs make sensational allegations that Defendants seek to hold a race at the Stadium to deprive Plaintiffs of their constitutional rights to equal protection. This argument fails, just as it did the last time many of these same Plaintiffs asserted similar allegations of racial discrimination in federal court, in their failed attempt to block the construction of the Stadium altogether. *See Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.*, 801 F. Supp. 684, 700-01 (S.D. Fla. 1992). As in that prior case, the only motivations behind Defendants' actions that the Court can plausibly infer here are "purely economic and political"—not the "invidiously discriminatory animus" that is necessary to support Plaintiffs' civil rights claims. *See id.*; *Lucero v. Op. Rescue of Birmingham*, 954 F.2d 624, 628 (11th Cir. 1992); Compl. ¶ 89, 142, 157, Ex. 1.

Further, the speculative nature of the purported future impacts that Plaintiffs allege could result from a Miami Grand Prix render this case unfit and unripe for declaratory and injunctive relief. Plaintiffs ask this Court to surmise—based on nothing more than an alleged agreement "in principle" and before any potential race has ever occurred or even been formalized (*e.g.*, Compl. ¶¶ 119, 175)—that a race ***might*** be so unreasonably loud that it would violate the Noise Ordinances of the County[2] and Miami Gardens[3] (the "Noise Ordinances") and ***might*** harm

---

[2] §§ 21-28, County Code (the "County Noise Ordinance").
[3] §§ 16-24, City Code (the "City Noise Ordinance").

Plaintiffs. This is an improper subject for declaratory relief, which is "used to clarify legal relations and not to make factual determinations[,]" or "'advis[e] what the law would be upon a hypothetical state of facts.'" *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade County Florida*, No. 20-CV-21084, at 18 (S.D. Fla. Jan. 22, 2021); *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 734–35 (11th Cir. 2018).

Moreover, Plaintiffs have no standing to seek enforcement of the Noise Ordinances, both of which plainly vest code inspectors and enforcement officers with the duty to police and prosecute noise violations, and neither of which creates or contemplates a private right of action.

Finally, the Court should decline to exercise its "'exceptionally broad discretion'" under the Declaratory Judgment Act for purposes of second-guessing the sound decisions of local elected officials in favor of the Miami Grand Prix. *See Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1375 (S.D. Fla. 2019) (quoting *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014)).

Accordingly, the Complaint, in its entirety, should be dismissed with prejudice.

## II.     LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A mere possibility that the defendant acted unlawfully is insufficient to meet this standard." *Betancourt v. Margaritaville Hollywood, Beach Resort, L.P.*, 2019 WL 2119611, at *2 (S.D. Fla. Mar. 29, 2019). "'Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'" *Jackson v. Bellsouth Tele.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004).

### III.        BACKGROUND

The Stadium—the anticipated site of a Miami Grand Prix—is a world-class sports complex that hosts marquee sporting events. *See* Compl. ¶ 149, 161. The Stadium is located in the City of Miami Gardens (the "City") in a geographic area defined by the County and City Codes as the "Stadium District" or "S District." §33-451, County Code; §34-602, City Code.

In 2017, the County and the City jointly passed the Stadium Zoning Ordinance.[4] The Stadium Zoning Ordinance provides that "**automotive shows, races, and exhibitions**" are permitted uses of the Stadium District. §33-452(2), County Code; §34-603(2), City Code (Uses permitted) (emphasis added). As part of the passage of the Stadium Zoning Ordinance, the County held public hearings, at which interested parties were afforded an opportunity to object to the inclusion of "automotive shows, races, and exhibitions" as permitted uses of the Stadium. *See* §1.02(B), Miami-Dade County Home Rule Charter. After the passage of the Stadium Zoning Ordinance, the County granted a zoning application in respect of the rezoning for the newly established Stadium District. Again, a public hearing was held, and again, any interested party was afforded an opportunity to object to the inclusion of "automotive shows, races, and exhibitions" as permitted uses. *See* §33-310(c), County Code; Defendants' Request for Judicial Notice [ECF No. 34], Ex. 4 (Clerk's notes from hearing no. 17-079). Even after the County granted the zoning application, interested parties were afforded the opportunity to appeal the rezoning to Court within 30 days. *See, e.g.,* County Code § 33-316; FLA. R. APP. P. 9.100(c)(2). Importantly, none of Plaintiffs, nor any other person, objected or otherwise sought

---

[4] Codified at County Code §§ 33-450 through 33-463 and City Code §§ 34-601 through 34-614.

judicial review. *Cf. Paresky v. Miami-Dade County Bd. of County Comm'rs,* 893 So. 2d 664, 665-66 (Fla. 3d DCA 2005) (holding that collateral estoppel applies to zoning proceedings).

In 2018, the County Commission passed Resolution R-518-18 directing Mayor Gimenez to negotiate a potential agreement to bring a Formula 1 race to the County and to coordinate with any hosting municipality to do so. Compl. ¶ 94; *Id.*, Ex. 1. It is against this legislative backdrop that Plaintiffs allege certain Defendants began negotiating to host an annual Miami Grand Prix at the Stadium. *Id.* ¶ 100. In October 2019, preliminary plans for the event were announced. *Id.*

On October 29, 2019, the Board of County Commissioners approved by majority vote Legislative Item No. 192689, a resolution proposed by County Commissioner Barbara Jordan that sought to impose restrictions on road closures for motor vehicle racing within the City and County. Compl. ¶¶ 131, 140, Ex. 2. Mayor Gimenez, however, vetoed the resolution on November 8, 2019. *Id.* ¶ 143. Mayor Gimenez's veto was sustained. *See id.* ¶ 147.

Commissioner Jordan also proposed Legislative Item No. 192543, a proposed ordinance which sought to revise regulations relating to the Stadium Zoning Ordinance. *Id.* ¶¶ 148, 155. The proposed ordinance failed when it came before the County Commission on February 19, 2020. *Id.*

Plaintiffs then filed a lawsuit in Miami-Dade County Circuit Court asserting claims akin to Counts IV and V of the present Complaint against many of the current Defendants. *See Betty T. Ferguson, et al. v. Miami Dolphins, et al.*, Case No. 2020-004045 CA 30 (Miami-Dade Cir. Ct. 2019) (the "State Court Action"). Defendants moved to dismiss the State Court Action. On October 30, 2020, Plaintiffs voluntarily dismissed the State Court Action and filed the present Complaint, naming additional defendants and seeking declaratory and injunctive relief through

causes of action for: alleged violations of 42 U.S.C. §1983 (Count I); alleged violations of 42 U.S.C. §1985(3) (Count II); breach of Florida's Protective Trust Doctrine (Count III); alleged violations of the County's Noise Ordinance (Count IV); and alleged violations of the City's Noise Ordinance (Count V).

## IV.   ARGUMENT

### A. THE DISMISSAL OF A PRIOR SIMILAR ACTION MILITATES FOR DISMISSAL OF COUNTS I AND II.

The fatal flaws in the Complaint are demonstrated by *Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp.*, 801 F. Supp. 684 (S.D. Fla. 1992), which was a prior 42 U.S.C. §1983 and §1985 action brought by many of the same Plaintiffs against South Florida Stadium's predecessor entity and the County. In *Lake Lucerne*, much like in the present action, Plaintiffs alleged that they had been discriminated against on the basis of race due to the donation, lease, and subsequent rezoning of the site whereupon the Stadium was constructed. *Id.* at 701. There, as here, Plaintiffs alleged a history of discrimination by the County and a disparate impact they contended would flow from Stadium activities. *Id.*

In granting dismissal, the Court rejected the plaintiffs' theory, holding that their conclusory allegations failed to establish the "racial, discriminatory animus" required to state a claim under §1985(3) because "[t]he only motivation that the Complaint reveal[ed] is a purely economic and political one on the part of all defendants." *Id*. With respect to the §1983 claim, the Court held that the plaintiffs failed to plead any facts supporting any understanding defendants supposedly reached to work together to deprive the plaintiffs of their rights. *Id*. at 702.

The allegations in this action are equally deficient. The Complaint itself makes clear that the Defendants' motivations for the Miami Grand Prix are purely economic and political. *See, e.g.,* Compl. ¶157 (alleging Defendants were motivated by "the economic benefit [of Formula 1] to non-Miami Gardens businesses and residents, including the County itself."), ¶ 89 (quoting press statement that Miami Grand Prix will "drive economic value to South Florida."). It is absurd to suggest that a general plan to hold a prestigious automotive race on the grounds of a world-class stadium—an event anticipated to bring hundreds of millions of dollars and thousands of new jobs to South Florida (Compl. ¶¶ 89, 142, 146, Ex. 1 at 3-4)—could be for the express purpose of racial discrimination. *See City of Memphis v. Greene,* 451 U.S. 100, 128 (1981) (holding that street closures were motivated by legitimate purposes and did not support a claim of racial discrimination, and the inconvenience to plaintiffs was "a function of where they live and where they regularly drive—not a function of their race"); *Terry Prop., Inc. v. Standard Oil Co. (Ind.)*, 799 F.2d 1523, 1536 (11th Cir. 1986) (holding that decision to locate an industrial plant near a predominantly minority neighborhood and rerouting of road did not support a claim of racial discrimination, in part because the site was "the most attractive [ ] from a business perspective.").

Further, as in *Lake Lucerne*, Plaintiffs have pled no facts supporting any unlawful agreement between any of the Defendants to deprive Plaintiffs of their rights; Plaintiffs' empty conclusory statements in this regard fail and cannot be amended to state a viable claim. *See Lake Lucerne Civic Ass'n*, 801 F. Supp. at 701-02.

**B. PLAINTIFFS LACK STANDING UNDER ARTICLE III AND THE DECLARATORY JUDGMENT ACT, AND THIS ACTION IS NOT RIPE FOR ADJUDICATION.**

Plaintiffs' conjecture about the "potential impacts" of a "proposed" event is devoid of the necessary concreteness, immediacy, and reality to establish claims for declaratory relief. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *e.g.*, Compl. ¶¶ 108, 169, 175.

Consistent with the standing requirements of Article III, before a federal court may issue relief under the Declaratory Judgment Act (28 U.S.C. §2201), "there still must be a case or controversy that is live, is 'definite and concrete,' and is susceptible to 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Gagliardi*, 889 F.3d at 734–35 (quoting *Aetna Life Inc. Co. v. Haworth*, 300 U.S. 277, 240-41 (1937)). In cases like this one involving pre-enforcement review, the inquiries of standing (*i.e.*, *who* can appropriately bring suit) and ripeness (*i.e.*, *when* they can bring the suit) "may tend to converge. This is because claims for pre-enforcement review involve the possibility of wholly prospective future injury, not a prayer for relief from damages already sustained." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).

Plaintiffs not only lack standing to assert claims under the Declaratory Judgment Act; their proposed claims are also not ripe for adjudication because they are supported by nothing more than speculation about effects that allegedly *may* result from a race that has never occurred and for which the ultimate sound impacts are undetermined. *See* Compl. ¶ 119 (alleging that certain Defendants have entered into an "agreement **in principle** to host the **first-ever** Formula One Miami Grand Prix at Hard Rock Stadium.") (emphasis added); *see U.S. v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) (internal quotations and citations omitted) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

Before the Miami Grand Prix has even been finalized—with no allegations as to what the final track plan, race schedule, and sound mitigation plan may ultimately be—Plaintiffs ask the Court to find that sound levels from such a race will be excessively loud and deprive them of unspecified rights. *See* Compl. ¶¶ 150, 153, 175-76, 246. But the Court does "not have the power to 'advise' potential parties about the lawfulness of potential actions that have not and may never occur[,]" which is exactly the nature of the relief Plaintiffs seek. *See Gagliardi*, 889 F.3d at 735.

Plaintiffs evidently expect this Court to weigh conflicting data from experts regarding the sound impacts that *may* result from a race that *may* occur and preemptively declare those sound impacts to be unreasonable. *See* Compl. ¶ 176. This is not a proper function of declaratory judgment, which serves only "to clarify [ ] legal relations and is not for the purpose of making factual determinations." *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011); *Triple R Paving, Inc. v. Liberty Mut. Ins. Co.*, 510 F. Supp. 2d 1090, 1093 (S.D. Fla. 2007) ("'it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass.'"); *cf. Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (holding claim was ripe as to purely legal, facial challenges because it was undisputed that club was subject to and complying with ordinance; further factual development was unnecessary).

Plaintiffs' claims for injunctive relief, which are subject to the same injury-in-fact standing requirements under Article III, fail for the same reasons. *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880 (11th Cir. 2016) (holding that both declaratory and injunctive relief require the plaintiff to "'allege facts from which it appears there is a substantial likelihood that he

will suffer injury in the future.'") (quoting *Strickland v. Alexander,* 772 F.3d 876, 883 (11th Cir.2014)). Further, injunctive relief is merely a remedy, dependent upon a viable underlying cause of action, which is lacking here, for the many reasons described herein. *Powers v. Niche Media Holdings, LLC*, 2009 WL 10669266, at *4 (S.D. Fla. Oct. 26, 2009).

At this early stage, the Court would only be rendering an improper advisory opinion concerning alleged harms that may never come to pass. *Nat'l Ad. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).

## C.  THE HOMEOWNERS ASSOCIATIONS SEPARATELY LACK STANDING.

In addition to the standing deficiencies applicable to all Plaintiffs, Plaintiffs Rolling Oaks Homeowners Association, Inc. and Miami Gardens Crestview Homeowners Association, Inc. (collectively, the "Homeowners Associations") also lack standing because they have not alleged a matter of "common interest" to their members, as required by Florida Statute Section 720.303. Thereunder, a homeowners association:

> may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all members **concerning matters of common interest to the members**, including, but not limited to, the common areas; roof or structural components of a building, or other improvements for which the association is responsible; mechanical, electrical, or plumbing elements serving an improvement or building for which the association is responsible; representations of the developer pertaining to any existing or proposed commonly used facility; and protesting ad valorem taxes on commonly used facilities.

FLA. STAT. §720.303 (emphasis added). The categories of common interest enumerated in this Section, while not exhaustive, are far afield from Plaintiffs' claims. Typically, "common interest" exists with respect to matters that will impact shared expenses or costs borne by members of the association. *See, e.g. Homeowner's Ass'n of Overlook, Inc. v. Seabrooke*

*Homeowners' Ass'n, Inc.*, 62 So. 2d 667, 670–71 (Fla. 2d DCA 2011); *Maronda Homes, Inc. of*

*Fla. v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1261, 1268 (Fla. 2013).

There is no basis to infer that the members of the Homeowners Associations have a judicially cognizable "common interest" in the relief sought by way of this action. As to Counts I and II, Plaintiffs have not pled anything about the racial identities of the Homeowners Associations' members. With respect to Counts III through V, the Complaint does not even include addresses for the Homeowners Associations' members so as to assess their distances from the Stadium and the corresponding potential noise impacts (if any) they may eventually face from the race. This foundational pleading failure further warrants dismissal as to the Homeowners Associations.

## D.  COUNT I SHOULD BE DISMISSED WITH PREJUDICE.

In Count I, Plaintiffs assert a municipal liability claim against the County under 42 U.S.C. §1983. Compl. ¶¶ 188-202. Plaintiffs face a considerable burden because "[t]he Supreme Court has placed strict limitations on [local government] liability under §1983." *Tennant v. Fla.*, 111 F. Supp. 2d 1326, 1331 (S.D. Fla. 2000). *Monell v. NYC Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007). Liability only extends to local government when it can be shown that: (1) an official policy promulgated by a final policymaker; (2) was the moving force behind a constitutional violation; (3) that occurred under color of state authority; and (4) demonstrated deliberate indifference to those rights. *See generally City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267 (1987). The present Complaint fails to satisfy any of these four elements.

### 1.  Plaintiffs' Alleged Harms Are Not Constitutional Violations.

As a primary matter, Plaintiffs cannot satisfy the elements of a §1983 claim because the harms they allege do not rise to the level of a ***constitutional violation***. *See Kibbe*, 480 U.S. at 267. Plaintiffs' allegations concern the quiet enjoyment of their property, which is "a state-defined property right, which the Eleventh Circuit held is not a fundamental right under the United States Constitution." *See, e.g.*, Compl. ¶¶ 7-20; *Dennis v. Brevard County*, 2018 WL 1939490 at *3 (M.D. Fla. Mar. 23, 2018) (citing to *Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003)); *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) ("Property interests [such as those described by Plaintiffs, however], are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). Accordingly, Plaintiffs' conclusory and speculative allegations concerning purported future race-related impacts (*e.g*., noise) fail to state a §1983 claim. *See Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir.2000) ("[T]he Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action.").

### 2.  A Federal Lawsuit is Not the Proper Forum to Address a Zoning Dispute.

Plaintiffs seek to force a judicial resolution of this purely political dispute by attempting to shoehorn federal causes of action into what is essentially a prospective and purely speculative nuisance claim. When distilled to its essence, Plaintiffs' allegations describe a zoning dispute in which a group of property owners object to the way neighboring property may be utilized in the future. *See* Sec. G(2), *infra*; Compl. ¶¶ 118, 148. While such land use disputes are common at County Hall, they seldom serve as a proper basis for a lawsuit in Federal Court. This is because

the Eleventh Circuit has "stress[ed] that federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions." *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989).

Plaintiffs allege that their rights under the Equal Protection Clause were violated because Formula 1 has moved on from attempting to organize an automotive race through the city streets of Downtown Miami and has re-focused its efforts on planning an automotive race in and around the Stadium. *See* Compl. at ¶¶ 87-150. This contention fails for at least two reasons.

First, to establish a potential Equal Protection claim, Plaintiffs would need to show—at a minimum—that the two locations "were similarly situated" *but for* the racial identities of their residents because "'[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause.'" *Campbell v. Rainbow City, Ala*., 434 F.3d 1306, 1314 (11th Cir. 2006) (quoting *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)) (holding that two developments "were not similarly situated, and there were material differences which could provide rational reasons for the different treatment of the two developments."); *Chabad Chayil*, No. 20-CV-21084, at 15 ("The other similarly situated entities—or comparators—must be alike in all material respects.")

Here, Plaintiffs do not—and cannot—establish that an automotive race through the streets of Downtown Miami is similar in all relevant respects to a race at the Stadium. *See, e.g.*, Compl. ¶¶ 87 (noting that the original plan for the Miami Grand Prix was that it would go "through Downtown Miami in Bayfront Park and the Port of Miami near the city's restaurants, shops, and residential districts."); *id*. ¶ 150 (alleging that the current track plan for Hard Rock Stadium does not require street closures). It is facially implausible that the only meaningful distinction between

13

these two sites is the racial composition of their surrounding neighborhoods. The Stadium is specifically designed to host large-scale sporting events, which Plaintiffs themselves allege has "eliminat[ed] the need for a formal street closure for the race." *Id.* Further, automotive racing is a permitted use of Hard Rock Stadium under the Stadium Zoning Ordinance. *See* Sec. G(2), *infra*.

Given the obvious differences between the two sites, it is unsurprising that Plaintiffs are unable to offer any factual allegations supporting any racially discriminatory motive on the part of the County (or any other party to this action), a crucial element in §1983 actions. *See* Compl. ¶190; *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. 1981) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978) ("Section 1983 actions challenging racial discrimination under the equal protection clause…require a showing of discriminatory motive."). Indeed, the only reasonable inference allowed by Plaintiffs' allegations is that the County was driven by race-neutral political or economic motivations. *See* Compl. ¶¶ 145-46 (alleging that County Mayor's veto was motivated by a desire to "allow [his] office more time to continue this dialogue with all parties" and to "buy[] three to six months so that the parties involved can continue to work toward a solution…"); *Id.* ¶ 156 (alleging that Commissioner Diaz "explained his decision with the following statement: 'We have to look at the greater good of all areas.'"); *Id.* ¶ 157 (alleging that future economic benefits to be enjoyed by County businesses drove the rejection of the failed ordinance). Plaintiffs' failure to plead any non-conclusory allegations concerning a racially discriminatory motive necessitates dismissal of Count I. *See Allen v. St. John*, 827 F. App'x 1002, 1007 (11th Cir. 2020).

**3.  Plaintiffs otherwise fail to satisfy the elements of 42 U.S.C. § 1983.**

CASE NO. 20-cv-24483- RNS

> **i.**  **None of the allegations against the County or the County Mayor constitute "an official policy promulgated by a final policymaker"**

The County may only be liable under §1983 if Plaintiffs' alleged injuries were inflicted pursuant to an "official policy" of the County. *See Monell*, 436 U.S. at 694; *Grech*, 335 F.3d at 1329; *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) ("[t]o subject a county to liability under §1983 [a] plaintiff must show that the [claimed] constitutional violation occurred as a result of a county policy."); *Chabad Chayil*, No. 20-CV-21084, at 10.

Here, the allegations against the County fall into two main categories: (1) Mayor Gimenez has been involved in negotiations between certain of the Defendants concerning the Miami Grand Prix, but Plaintiffs do not allege any final or binding commitment by the County (*see, e.g.*, Compl. ¶ 145); and (2) the Board of County Commissioners did not approve legislation that would have imposed additional regulatory requirements for road closures for the hosting of an automotive race and failed to enact a zoning ordinance that Plaintiffs allege "would require the Dolphins to acquire special events permits from both the City and the County, even if road closures were not involved, subject to approval by the full County Commission" (*see, e.g.*, Compl. ¶ 118). Both sets of allegations, even when accepted as true, fail to meet the "official policy" element of a §1983 claim. *See Chabad Chayil*, No. 20-CV-21084, at 10-14 (dismissing complaint with prejudice where plaintiff failed to allege a county-wide policy, but instead focused on isolated actions of individuals who lacked final policy-making authority).

With respect to the allegations against Mayor Gimenez, there can be no "official policy" established by the Mayor's alleged actions because §1983's "official policy" requirement is only met when an official act has been taken by a "final policymaker." *Grech*, 335 F.3d at 1329. The

County Mayor cannot serve as a final policymaker in this matter because any agreement between the County and any of the Defendants would require approval by the County's governing body—the Board of County Commissioners. *See* Fla. Const., art. VIII, §11 (recognizing the Board of County Commissioners as "the governing body" of the County); *see also Citizens for Reform v. Citizens for Open Gov't, Inc*., 931 So.2d 977, 988 (Fla. 3d DCA 2006) (holding that the County Mayor's "administrative powers exist to carry out the policies adopted by the Commission. Thus, it is clear that the powers of administration must conform to the dictates and policies of the County Commission and not vice-versa."); *Maschmeier v. Scott*, 269 F. App'x 941, 943-44 (11th Cir. 2008) ("When a council or board has the power to review and reverse a municipal official's decision, final policymaking authority does not vest in the official."); *Chabad Chayil*, No. 20-CV-21084, at 13-14.

With respect to the allegations against the Board of County Commissioners, Plaintiffs once again fail to identify any official policy that the County Commission adopted that would support Count I. Instead, Plaintiffs contend that the County Commission's failure to adopt ***new*** legislation that would have provided ***special*** protections and ***additional*** regulations for automotive races in Miami Gardens violated the Equal Protection Clause of the 14th Amendment. *See, e.g.*, Compl. ¶ 118. And, Plaintiffs concede that some of the un-adopted regulations would now be moot because the plans that initially drew Plaintiffs' ire have since been amended to "effectively eliminat[e] the need for a formal street closure for the race, as well as delaying the start of racing until 3:00 PM on Friday of the race weekend ostensibly to not have races during school hours." *Id*. at ¶ 150.

ii.   **The County's alleged conduct is not the "moving force" behind Plaintiffs' alleged injuries.**

"Given the importance, under §1983, of distinguishing between direct and vicarious liability, the [Supreme] Court repeatedly has stressed the need to find a direct causal connection between municipal conduct and the constitutional deprivation." *Kibbe*, 480 U.S. at 267. This standard is only met when "[t]he causal link between the municipal policy and the constitutional violation [is] readily apparent." *Id.* at 267; *see Rheuark v. Shaw*, 628 F.2d 297, 305-06 (5th Cir. 1980) ("for a governmental unit to be liable under s 1983, the policy or custom must . . . be a proximate cause of the constitutional violation."). Here, that causal link is wholly absent because Plaintiffs do not and cannot allege that the County will play any role in organizing or operating the Miami Grand Prix. Thus, the necessary causation is lacking because the County, by Plaintiffs' own allegations, will not be unilaterally—or even primarily—responsible for causing any purported future race-related impacts Plaintiffs allege will result from the race.

4.   **Plaintiffs' Cannot Obtain Declaratory Relief for Past Actions**

In Count I, Plaintiffs request "an order declaring that Defendant Miami-Dade County and Defendant Mayor Gimenez intentionally ***discriminated*** against the Plaintiffs[.]" Compl. ¶ 3 (emphasis added). That request, however, is deficient on its face because "declaratory relief may only be issued in the case of an 'actual controversy.' That is, there must be a substantial continuing controversy between parties having adverse legal interest." *Emory v. Peeler*, 756 F.2d 1547, 1551 (11th Cir. 1985). Plaintiffs' use of the past verb tense in their request ("discrimina***ted***") reveals they are solely seeking a declaration that their constitutional rights were previously violated by alleged past conduct that occurred over a year ago. That is not a

proper basis for declaratory relief, which is prospective in nature. *Id.* (holding that "[a] declaration that [defendant's] past conduct violated [plaintiff's] constitutional rights and [state] law 'would be nothing more than gratuitous comment without any force or effect.'") (quoting *N. Va. Women's Medical Center v. Balch,* 617 F.2d 1045, 1049 (4th Cir. 1980)); *Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury.").

5. **The Redundant Claims against Mayor Gimenez, in his Official Capacity, Should Be Dismissed.**

It is axiomatic that "[w]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. . . . Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) (footnote, citations, and internal marks omitted); *see also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted); *Snow ex rel. Snow v. City of Citronelle, AL,* 420 F.3d 1262, 1270 (11th Cir. 2005). Nevertheless, Plaintiffs have sued both the County and Carlos A. Gimenez, in his official capacity as Mayor of Miami-Dade County, for the same alleged conduct. *See* Compl. ¶¶ 22-23, 61-78. Plaintiffs cannot assert any unique claim against Mayor Gimenez, who when acting in his official capacity, is, as a matter of law one and the same as the County.

The Eleventh Circuit routinely deems such official-capacity claims against the individual defendant redundant and dismisses them on that basis. *See, e.g., Abusaid v. Hillsborough County Bd. of County Com'rs,* 405 F.3d 1298, 1302 n. 3 (11th Cir. 2005) (explaining that where plaintiff named county and county fire marshal in his official capacity as separate defendants, only the fire marshal's employer—the county—was proper party); *Busby,* 931 F.2d at 776 ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury.").[5] Thus, although Plaintiffs seek to treat the County and Mayor Gimenez as two separate defendants, case law requires the Court do otherwise, and dismiss the claims against Mayor Gimenez as redundant.

## E.   COUNT II FOR ALLEGED VIOLATIONS OF 42 U.S.C. §1985(3) SHOULD BE DISMISSED WITH PREJUDICE.

Count II purports to state a claim against all Defendants for allegedly conspiring in violation of 42 U.S.C. §1985(3). Section 1985(3) was "intended … to apply only in cases where there was racial or class-based animus" (*i.e.*, where two or more people conspire for the **express purpose** of violating another's constitutional rights). *See Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 347 (5th Cir. 1981).

Plaintiffs do not and cannot state a cause of action upon which relief can be granted in Count II. To state a claim under §1985(3), a plaintiff must plead and prove:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class or persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in

---

[5]  State courts evaluating state law claims have given similar treatment to this form of redundant pleading. *See, e.g., DeArmas v. Ross*, 680 So.2d 1130, 1131-32 (Fla. 3d DCA 1996).

> his person or property or deprived of any right or privilege of a citizen of
> the United States.

*See Childree v. UAP/GA AG Chem, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996) (citing *Lucero*, 954 F.2d at 627); *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). Plaintiffs cannot and have not plead any of these elements.

The first element requires allegations that Defendants reached an agreement or understanding to violate Plaintiffs' constitutional rights. *See, e.g., Montford v. Moreno*, 2005 WL 1369563, at *8 (11th Cir. June 9, 2005) (affirming dismissal because plaintiff "failed to allege any evidence that the defendants reached an understanding to violate his rights"). Plaintiffs do not (and cannot) allege that Defendants reached such an agreement or understanding—Plaintiffs' vague and conclusory recitations of conspiracy simply do not suffice. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

Tellingly, Plaintiffs admit that they do not even know which Defendants are "responsible for the negotiations, agreement, and anticipated consummation of proposed Formula One races in Miami." *See* Compl. at 9, n.1. For example, with respect to Defendant RSE Ventures, LLC ("RSE") Plaintiffs' sole allegations are that RSE retained lobbyists "to obtain approval for the Miami Grand Prix in Miami Gardens, and also lobbied City of Miami officials to obtain approval for a F-1 race in Downtown Miami in 2018," and that "on information and belief, either RSE or Stephen Ross personally has the exclusive franchise to promote Formula One racing in South Florida." *See* Compl. ¶ 25.

"In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. In conspiracy cases, a defendant must be informed of the nature of the conspiracy that is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 556-57 (internal citations omitted). Plaintiffs' allegations plainly fail to satisfy this standard.

Moreover, to the extent that Count II is premised upon an alleged conspiracy between the private Defendants—*e.g*., South Florida Stadium, Miami Dolphins, Ltd., RSE, Liberty Media Corporation, Formula One Management Limited, and Formula One World Championship Limited—Plaintiffs fail to satisfy this element for the additional reason that "private conspiracies"—that is, conspiracies among private actors—are actionable under §1985(3) *only* if they involve the right to interstate travel and the right against involuntary servitude. *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010); *Robb v. Rahi Real Estate Holdings*, 2011 WL 2149941 (S.D. Fla. 2011). The Complaint makes no allegations relating to those rights, so any claim for an alleged "conspiracy" between the private Defendants also fails for this reason.

The second element of a claim under §1985(3) requires a conspiracy "for the *purpose* of depriving, either directly or indirectly, any person or class or persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." *Childree*, 92 F.3d at 1146-47 (emphasis added). "More specifically, the second element requires a showing of some 'racial, or perhaps otherwise class-based, *invidiously discriminatory animus behind the conspirators'*

*action*.'" *See Lucero*, 954 F.2d at 628 (quoting *United Brotherhood of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)) (emphasis added); *accord Childree*, 92 F.3d at 1148.

"A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be '*aimed at*;' its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275, (quoting *Carpenters*, 463 U.S. at 832-33) (internal citation omitted); *see also Lake Lucerne*, 801 F. Supp. at 701 (holding that allegations of a disparate impact on Plaintiffs' "predominantly black middle-class residential neighborhood" do not "rise to the level of 'racial discriminatory animus' required to state a claim under § 1985(3)"); *Kearson v. So. Bell Tel. & Tel. Co*., 763 F.2d 405, 407 (11th Cir. 1985) (holding that although plaintiff alleged he was black, he failed to plead facts to plausibly infer that defendants deprived him of telephone services because of racial animus). Courts strictly and rigorously enforce this element—and its requirement of "discriminatory motivation[;]" otherwise the Act would amount to nothing more than "a general federal tort law," which is not its purpose. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The crux of the alleged "conspiracy" is that entities who are in the business of sponsoring and hosting sporting events have negotiated to hold a globally sought-after automotive race on the grounds of the Stadium. The Complaint repeatedly acknowledges that Defendants are motivated by the economic and commercial benefits to be gained from the Miami Grand Prix. *See, e.g., id.* ¶ 89; ¶ 157. The obvious and alleged business motivations driving the Miami Grand Prix are not the race or class-based discriminatory animus required to sustain a claim under §1985(3). *See Carpenters*, 463 U.S. at 838 ("We thus cannot construe §1985(3) to reach conspiracies motivated by economic or commercial animus."); *see also id.* at 839 (holding that

§1985(3) does not provide a cause of action "where one economic group is pitted against another." . . . "Economic and commercial conflicts [ ] are best dealt with by statutes, . . . specifically addressed to such problems, as well as by the general law proscribing injuries to persons and property."); *Lake Lucerne*, 801 F. Supp. at 701.

Even if the Complaint did not include those acknowledgments, the notion that the **motivation** and **purpose** for holding a prestigious automotive race at the Stadium is to discriminate against African-Americans and violate their constitutional rights is outrageous and patently implausible. *See Boyd v. Warden, Holden Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679) ("'Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"). Defendants' conclusory statements in this regard are devoid of factual support and facially implausible and are therefore insufficient to state a claim. *See id.*

Given that Plaintiffs have failed to plead any actionable conspiracy, any alleged acts by Defendants cannot satisfy the third element of a claim under §1985(3): an act in furtherance of the conspiracy.

Finally, there are two reasons that the Complaint fails to allege the fourth element of a claim under §1985(3), which requires Plaintiffs to be "either injured in [their] person or property or deprived of any right or privilege of a citizen of the United States." *See Childree*, 92 F.3d at 1146-47.

First, there is no injury. Plaintiffs' theory of injury is that holding an automotive race at the Stadium *would* violate their constitutional right to equal protection of (unspecified) laws,

under the Fourteenth Amendment. *See* Compl. ¶ 205. But, the race has not yet occurred, so it is impossible for Plaintiffs to have suffered any harm. Further, Plaintiffs have failed to identify any constitutionally protected right or privilege, or any aspect of equal protection that would allegedly be violated once the race occurred. *See* Compl. ¶ 205, 207 (failing to define alleged "rights, benefits, and entitlements" supposedly "disregarded" or their respective sources). Plaintiffs do not have any constitutionally guaranteed right to be free from future traffic congestion, noise, or any of the other impacts they allege would result from a race, as conceded by the Complaint's acknowledgement that the Stadium is frequently used for large spectator events that cause such externalities. *See* Compl. ¶ 164.

Second, "there can only be a deprivation of the rights of a plaintiff when the action of the defendants is otherwise illegal." *See McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 925 (5th Cir. 1977). It is clearly not illegal to engage in negotiations to hold an automotive race at a sporting venue where automotive racing is a permitted use, and that is all Plaintiffs have alleged. *See* Compl. ¶ 148. Plaintiffs' attempt to portray such conduct as a violation of the Equal Protection Clause of the Fourteenth Amendment fails for the additional reasons addressed in Section D(1) and (2), *supra* (p. 12-15). Therefore, Count II should be dismissed with prejudice because it fails to state a claim and cannot be amended to state one.

## F. COUNT III SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE "PUBLIC TRUST DOCTRINE" IS INAPPLICABLE AND DOES NOT CREATE A PRIVATE RIGHT OF ACTION IN THIS CONTEXT.

Count III asserts that the County violated the "Public Trust Doctrine" as codified in Article II, Section 7(a) and Article X, Sections 11 and 16 of the Florida Constitution. *See* Compl.

¶ 229. These provisions are inapplicable to the facts alleged in the Complaint, and Count III should be dismissed with prejudice.

**1. Article X, Sections 11 and 16 of the Florida Constitution Are Irrelevant to this Case**

Count III is based on two provisions of the Florida Constitution that relate exclusively to navigable waters. Compl. ¶¶ 221-222. Specifically, Fla. Const. art. X, § 11 provides: "The title to lands under ***navigable waters***, within the boundaries of the state, which have not been alienated, including ***beaches*** below mean high water lines, is held by the state, by virtue of its sovereignty, in trust for all the people" (emphasis added). Similarly, Fla. Const., art. X, § 16 states: "The ***marine resources*** of the State of Florida belong to all of the people of the state and should be conserved and managed for the benefit of the state, its people, and future generations." However, Plaintiffs have pleaded no facts whatsoever to establish any connection between the conduct alleged and navigable waters or marine resources, and it is plain from the face of the Complaint that no such connection exists. Therefore, any claim predicated on Sections 11 and 16 should be dismissed.

**2. No Court Has Recognized a Cause of Action under Article II, Section 7(a)**

Plaintiffs also purport to state a claim under Art. II, § 7(a), which states that "[i]t shall be the policy of the state to conserve and protect its natural resources and scenic beauty. Adequate provision shall be made by law for the abatement of air and water pollution and of excessive and unnecessary noise and for the conservation and protection of natural resources." Plaintiffs ask this Court to infer that this provision confers a private right of action upon any citizen who is unhappy with local government decisions impacting the environment. The County has located no decision in which a court recognized a claim under Fla. Const., art. II, §7(a). Indeed, the only

decision that the County has located that discusses this provision states, "**section 7(a) of the Florida Constitution does not vest the [plaintiff] with a constitutional right of any kind**." *Dep't of Transp. v. City of Miami*, 20 So. 3d 908, 911 (Fla. 3d DCA 2009) (emphasis added). *Cf. McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002) ("[W]e are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.").

Further, the 1998 Editor's Notes to §7(a) indicate that "conservation and protection of natural resources" is merely "***an aspirational goal***" in recognition of the fact that "Floridians find conservation and protection of their natural resources important responsibilities of the state." *Id*. (emphasis added). Tellingly, the Editors did not suggest that this provision was drafted or amended to enable individuals to bring private lawsuits for the preservation of natural resources.

The purely aspirational nature of §7(a) is underscored by subsections (b) and (c), which establish express consequences and prohibitions for specified activities. *See* Fla. Const., art. II, §§7(b)-(c). In contrast, Section 7(a), imposes no definite obligations or repercussions; it simply recites a policy goal.

### 3. The Public Trust Doctrine Does Not Apply to the Atmosphere

Plaintiffs describe the "Public Trust Doctrine" as requiring governments "to protect and preserve [numerous] Public Trust Resources," Compl. ¶ 223, and the "natural resource" that claim will be impacted by the race is "the air, or atmosphere." *Id*. ¶ 226. However, no Florida court has ever expanded the "public trust doctrine" to include claims relating to "the air, or atmosphere," and efforts to do so in other states have almost universally failed. *See Sanders-Reed ex rel. Sanders-Reed v. Martinez*, 350 P.3d 1221 (N.M. Ct. App. 2015). In addition, the

only Florida court to have considered this issue also rejected the plaintiffs' claims and dismissed their complaint with prejudice. *See Reynolds v. State of Fla.,* 2020 WL 3410846 (Fla. Cir. Ct. June 10, 2020).[6] This Court should follow the well-trodden path laid out by almost all courts that have considered this issue and dismiss the claim.

### 4. Plaintiffs' Application of the Public Trust Doctrine is Unworkable

Allowing Count III to proceed would establish an unworkable precedent. If Plaintiffs were entitled to assert "Public Trust" claims as alleged, individuals would effectively be granted a license to file suit anytime they believe that the government has not addressed pollution concerns sufficiently to their liking. When faced with an analogous scenario, the Florida Supreme Court elected to avoid setting the troubling precedent that Plaintiffs seek in this action.

In *Coal. For Adequacy & Fairness in Sch. Funding, Inc. v. Chiles*, 680 So.2d 400 (Fla. 1996), plaintiffs, relying on Art. IX, Section 1 of the Florida Constitution,[7] sued the State alleging it had not done enough to fund the public education system. The Florida Supreme Court held that "[t]here is no textually demonstrable guidance in Article IX, section 1, by which the courts may decide, a priori, whether a given overall level of state funds is 'adequate,' in the abstract." *Id.* at 407. The Court further noted that ruling in plaintiffs' favor would require the court to "subjectively evaluate the Legislature's value judgments as to [state] spending priorities. . . . the Court would have to usurp and oversee the appropriations power . . . in order to grant the relief sought by Plaintiffs." *Id*.

---

[6] The initial complaint in the *Reynolds* can be found at 2018 WL 10810944. It is currently on appeal before the First District Court of Appeals, Case No. 1D20-2036.

[7] Art. IX, §1: "Adequate provision shall be made by law for a uniform system of free public schools and for the establishment, maintenance and operation of institutions of higher learning and other public education programs that the needs of the people may require."

Similar concerns related to separation of powers warrant dismissal here. Indulging Plaintiffs' request would require this Court to "subjectively evaluate" the value judgments of the County's elected officials concerning the use of the Stadium and replace them with the Court's own environmental policy decisions. Instead, this Court should dismiss Count III and avoid entangling itself in the resolution of a nonjusticiable political question. *Id.; see also* Sec. H, *infra*.

## G.  COUNTS IV AND V SHOULD BE DISMISSED WITH PREJUDICE.

### 1.  The Noise Ordinances Do Not Confer a Private Right of Action.

In Counts IV and V, Plaintiffs likewise inappropriately seek declaratory and injunctive relief under Noise Ordinances that do not allow for private enforcement actions. This Court should refuse to infer a private right of action to prosecute violations of the County and City Code where the local legislatures plainly intended none. *See, e.g.*, *Loftus v. Bobzien*, 848 F.3d 278, 291 (4th Cir. 2017) ("Absent 'clear and specific evidence of legislative intent,' if a federal court creates a private right of action in a state law it 'abrogates both the prerogatives of the political branches and the obvious authority of states to sculpt the content of state law.'") (quoting *A&E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986)); *Cunningham v. Pinellas Cty. Sheriff's Dep't*, No. 8:99-CV-550-T-25C, 2000 WL 641601, at *3 (M.D. Fla. Feb. 29, 2000) (holding that county ordinance "d[id] not give rise to a private right for a complainant to bring suit" because there was "no implicit or explicit language within this ordinance that expresses any intent to create a private cause of action."); *see also Reinoso v. AGC Consulting Civil Engineers*, 2015 WL 12533085, at *4 (S.D. Fla. Oct. 7, 2015) (declining to exercise supplemental jurisdiction where county ordinance did not clearly provide for private right of action).

Both Codes contain detailed enforcement mechanisms, the responsibility for which they delegate to specified code inspectors or law enforcement officers, and are silent as to any private right of action to enforce their respective Noise Ordinances. *See Vaughn v. Segal*, 707 So. 2d 951, 952 (Fla. 3d DCA 1998) (holding that, where county ordinance "set[] up a list of prohibited conditions, establishe[d] a schedule of required maintenance, and provide[d] for enforcement by the county authorities[,]" there was no legislative intent to create a private cause of action); *City of Sarasota v. Windom*, 736 So. 2d 741, 742 (Fla. 2d DCA 1999) ("the enforcement power for section 316.0745 is vested in the Department of Transportation. In the absence of legislative intent to create a private cause of action . . . we decline to create such a cause of action.").

The County Code tasks "code inspectors" with the "duty to assure the enforcement of and compliance with the Code of Miami-Dade County." § 8CC-3(a) (Enforcement Procedures). A code inspector who finds a violation of the County Noise Ordinance may issue a civil violation notice (*id.* at (e)), which the recipient has the opportunity to appeal through an administrative hearing. *Id.*, §§ 8CC-5(a)(2), 8CC-5.1.

Tellingly, other portions of the County Code explicitly provide for a private cause of action for individuals damaged by violations of those other sections. *See, e.g.*, *id.*, § 8A-124.24, § 11-34. The County Noise Ordinance, on the other hand, is silent as to any private right of action to enforce its provisions, indicating that the County Commission did not intend to create one. *See Betancourt*, 2019 WL 2119611, at *5 ("'Had the County intended a judicial remedy in addition to the administrative one, it would have so expressly stated.'") (quoting *Francois v. Caribbean Airmail, Inc.*, 2002 WL 31465742, at *1 (S.D. Fla. June 18, 2002); *Francois*, 2002

29

WL 31465742, at *1 ("It is apparent that the Miami–Dade County Commission knew how to provide private judicial remedies for violations [ ] when it desired.").

Similarly, Section 16-27 (Enforcement) of the City Code provides that "City code enforcement officers and city police officers will have the primary responsibility for the enforcement of the noise regulations contained herein." Chapter 8, Article III (Enforcement Procedures) specifies how noise violations must be addressed, beginning with a warning notice and a reasonable cure period, followed by a civil violation notice. *Id.*, § 8-54. Pursuant to Section 8-57(a)(2), the recipient of a civil violation notice has the right to request an administrative hearing to appeal the decision of the code enforcement officer. Section 8-54(d) even establishes special expedited procedures for instances in which a code enforcement officer has reason to believe a violation poses "a serious threat to the public health, safety, or welfare," as Plaintiffs contend will be true of the Miami Grand Prix.

*Lawrence v. IMAGINE*, 333 F. Supp. 2d 379 (D. Md. 2004) underscores the untenable nature of Counts IV and V. The *Lawrence* court considered whether a statute prohibiting operators of marine vessels from emitting noise in excess of 90 decibels conferred a private right of action on an individual who suffered hearing loss from a cannon fired from a boat. *Id.* at 381, 388. The court held that there was no private cause of action because the statute and the "detailed enforcement scheme" created thereunder were "intended to confer 'general benefit' of noise reduction on the public at large." *Id.* at 389. The court further held that enforcement of the statutorily required noise levels would be hindered by private actions, which would result in "conflicting rules, interpretations, and practices" and "would risk opening floodgates to a

limitless array of actions that were not envisaged by the General Assembly's narrowly-defined statutory and regulatory scheme." *Id.*

Because the Noise Ordinances contain detailed mechanisms for government enforcement and no language evincing legislative intent to create a private cause of action, Plaintiffs lack standing to assert a claim under the Noise Ordinances, and Counts IV and V should be dismissed with prejudice. *See, e.g.*, *Betancourt*, 2019 WL 2119611, at *5; *Francois*, 2002 WL 31465742, at *1; *Vaughn*, 707 So. 2d at 952.

### 2. Counts IV and V are Further Foreclosed by the Use, Nature and Zoning of the Stadium District.

The City Noise Ordinance provides that the "use, nature, and zoning of the area from which the sound emanates" is a key factor in determining whether the sound is "unreasonably loud and raucous" so as to constitute a noise violation. § 16-24(b)(2).

The Stadium Zoning Ordinance expressly provides that "**automotive shows, races, and exhibitions**" are a permitted use of the Stadium District. § 33-452(2), County Code; § 34-603(2), City Code (emphasis added). Further, the Complaint acknowledges the ongoing use of the Stadium for loud sporting events and concerts. *See* Compl. ¶¶ 161, 164, 244. Accordingly, the "use, nature, and zoning" of the Stadium make it unreasonable to infer at this juncture that a future Miami Grand Prix would *per se* violate the Noise Ordinances. *Diaz v. Lopez*, 167 So. 3d 455, 460 (Fla. 3d DCA 2015) (when called upon to harmonize applicable legal authorities, courts must give reasonable meaning to each).

### H. SEPARATION OF POWERS FURTHER MILITATES AGAINST THE COURT EXERCISING ITS AMPLE DISCRETION IN FAVOR OF CONSTRUING PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF.

Finally, in its exercise of the "'exceptionally broad discretion'" afforded to it under the Declaratory Judgment Act, the Court should decline to entertain these claims. *See Organo*, 416 F. Supp. 3d at 1375 (quoting *Otwell*, 747 F.3d at 1280); *ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, 2018 WL 6271839, at *5 (S.D. Fla. Oct. 18, 2018) ("The Supreme Court has held that '[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'") (quoting *Public Affairs Ass., Inc. v. Rickover*, 369 U.S. 111, 112 (1962); *Ansin v. Villella*, 2018 WL 3089331, at *1 (S.D. Fla. Jan. 4, 2018).

There is no compelling reason for this Court to second-guess or disturb the sound decisions of duly elected community officials, including the passage of the Stadium Zoning Ordinance and Resolution R-518-18. *See* Sec. G(2), *supra*. Plaintiffs should not be allowed to use this Court to circumvent those decisions and deprive South Florida Stadium of a permitted use of its property. *See* Fla. Const. art. II, § 3 ("The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."); *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) ("Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation.").

Therefore, even assuming, *arguendo*, that Plaintiffs' Complaint satisfied jurisdictional requirements and otherwise stated a claim for relief that is plausible on its face (and it does not), the Court should utilize its discretion to dismiss Counts IV and V.

## V.     **CONCLUSION**

CASE NO. 20-cv-24483- RNS

For the foregoing reasons, the Plaintiffs lack standing, the Court lacks subject matter jurisdiction and the Complaint fails to state a cause of action for declaratory or injunctive relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Public Trust Doctrine, or the Noise Ordinances of Miami-Dade County or Miami Gardens.

**WHEREFORE**, Defendants respectfully request that this Court enter an order dismissing Plaintiffs' Complaint for Injunctive Relief with prejudice and awarding Defendants their reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

Dated: January 22, 2021

| | |
|---|---|
| BILZIN SUMBERG BAENA PRICE & AXELROD LLP 1450 Brickell Avenue, Suite 2300 Miami, Florida 33131-3456 Telephone:  (305) 374-7580 Facsimile:  (305) 374-7593 | HOLLAND & KNIGHT LLP 701 Brickell Avenue, Suite 3300 Miami, Florida 33131 (305) 374-8500 (telephone) (305) 789-7799 (facsimile) |

BILZIN SUMBERG BAENA PRICE
& AXELROD LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593

By:  */s/ Melissa Pallett-Vasquez*
    Melissa Pallett-Vasquez (FBN 715816)
    mpallet@bilzin.com
    Shalia Sakona (FBN 107398
    ssakona@bilzin.com
    alopez@bilzin.com
    stapanes@bilzin.com
    service@bilzin.com

*Attorneys for Defendants Miami Dolphins, Ltd., South Florida Stadium LLC, and RSE Ventures, LLC*

HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/  Scott D. Ponce
    Scott D. Ponce (FBN 0169528)
    scott.ponce@hklaw.com
    Wifredo Ferrer (FBN 887005)
    wifredo.ferrer@hklaw.com
    Sydney B. Alexander (FBN 1019569)
    sydney.alexander@hklaw.com

*Counsel for Defendants Liberty Media Corporation, Formula One Management Limited and Formula One World Championship Limited*

ABIGAIL PRICE-WILLIAMS
Miami Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
(305) 375-5151 (telephone)
(305) 375-5634 (facsimile)

CASE NO. 20-cv-24483- RNS

By: /s/ *Michael V. Valdes*
Michael B. Valdes (FBN 93129)
mbv@miamidade.gov

*Counsel for Miami-Dade County, Florida and*
*Mayor Carlos Gimenez*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served

electronically via the CM/ECF system this 22nd day of January, 2021 upon all counsel of record.

By:   /s/ *Melissa Pallett-Vasquez*
**Melissa Pallett-Vasquez**

34