United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Betty T. Ferguson and others,<br>Plaintiff,<br><br>v.<br><br>Miami Dolphins and others,<br>Defendants. | )<br>)<br>)<br>)   Civil Action No. 20-24483-Civ-Scola<br>)<br>)<br>) |

### Order Denying Motion for Reconsideration
### and Denying Leave to File an Amended Complaint

The Plaintiffs, residents[1] and homeowner associations[2] in Miami Gardens, Florida, complain the Defendants, Miami-Dade County[3] and various private-entity Defendants,[4] violated their civil rights, under 42 U.S.C. §§ 1983 and 1985, and certain state, county, and city laws, by planning to hold a large-scale, car-racing event at the Hard Rock Stadium in their neighborhood. (Compl., ECF No. 1.) Upon the Defendants' motion, the Court dismissed the Plaintiffs' federal claims for their failure to state a claim and declined to exercise supplemental jurisdiction over the remaining state-law claims. (Order, ECF No. 62.) At the same time, the Court denied the Plaintiffs' motion for leave to file an amended complaint, improperly inserted within their response to the motion to dismiss. (Pls.' Resp. to Mot. to Dismiss, ECF No. 44, 30; Order at 18.) The Plaintiffs now ask the Court to reconsider its order, submitting the Court erred in dismissing their federal claims. (Pls.' Mot., ECF No. 74.) Within their motion, the Plaintiffs also renew their efforts seeking leave to amend. (*Id.* at 19–20.) The Defendants oppose the motion (Defs.' Resp., ECF No. 75) and the Plaintiffs have replied (Pls.' Reply, ECF No. 79). After careful consideration, the Court **denies** the Plaintiffs' motion in its entirety (**ECF No. 74**).

---

[1] The individual resident Plaintiffs, who describe themselves as Black residents of Miami Gardens, living in neighborhoods surrounding the Hard Rock Stadium, are Betty T. Ferguson, Thomas Jones, Jr., Bobby Wooden, Howard Dupree, David Dykes, Anne Dykes, Janice Smith, Susan Smith, Sylvia Porter Perkins, Gloria Taylor, Josette Elysee, and Sallie Holmes.

[2] The homeowner association Plaintiffs are the Lake Lucerne Civic Association, Inc., the Rolling Oaks Homeowners Association, Inc., and the Miami Gardens Crestview Homeowners Association, Inc.

[3] The Plaintiffs agreed to dismiss Mayor Carlos Gimenez, being sued in his official capacity, from this action. (Pls.' Resp. at 10 n.1.)

[4] The private-entity Defendants are Miami Dolphins, Ltd., South Florida Stadium, LLC, RSE Ventures, LLC, Formula One Management Limited, Formula One Miami, Formula One, Formula One Miami Grand Prix Racing, and Liberty Media Corporation.

1. **Legal Standard**

    "[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox,* 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). "Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at 1563 (citation omitted). Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, as here, however, a motion to reconsider is not ordinarily warranted.

2. **Reconsideration of the Court's order dismissing the Plaintiffs' federal claims is not warranted.**

    The Plaintiffs premise their motion for reconsideration of the Court's dismissal of their federal claims on three general bases: (A) errors the Plaintiffs contend the Court made in evaluating whether the Plaintiffs are similarly situated to the residents of downtown Miami (Pls.' Mot. at 7–11); (B) errors they say the Court made in the way it assessed the Plaintiffs' allegations of the County's discriminatory intent (*id.* at 12–19); and (C) newly discovered evidence that the Plaintiffs contend is "pertinent to" their claims (*id.* at 4–7). Upon a careful review of the record, the relevant legal authorities, and the briefing of the motion, the Court is not persuaded that reconsideration is warranted on any of these grounds.

    A. **"Similarly Situated" Issue**

    To begin with, regarding the "similarly situated" analysis, the Plaintiffs posit that the Court improperly focused its assessment on the differences between the proposed *venues* for the car races rather than on the *residents themselves*. According to the Plaintiffs, the differences between the two sites is irrelevant and the Court's analysis should have been confined to evaluating

only the characteristics of the people in those neighborhoods, divorced from the neighborhoods themselves, in which they are situated. The Court finds the Plaintiffs' position misses the mark for the following reasons.

First, the Plaintiffs never raised this issue, in either their complaint or in briefing their opposition to dismissal. To the contrary, much of their presentation focused on comparing the characteristics and physical attributes of the two venues or neighborhoods. For example, in their complaint, the Plaintiffs repeatedly describe, compare, and contrast the two potential race routes (*e.g.*, Compl. ¶¶ 87, 93, 95, 100, 102, 158). Additionally, in their response to the Defendants' motion to dismiss, the Plaintiffs pointedly argued that "the two proposed race locations . . . are similarly situated in all material respects," focusing on issues related to the economic value that would inure to the region, regardless of venue, and how both venues are similarly "designed to host large-scale events." (Pls.' Resp. to Mot. to Dismiss, ECF No. 44, 11.) And so, even if the Court found the Plaintiffs' newly presented argument meritorious, which it, in any event, does not, the Plaintiffs, without more, cannot raise it for the first time in a motion for reconsideration. *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 744 (11th Cir. 2014) (noting that "a Rule 59(e) motion cannot be used simply as a tool to reopen litigation where a party has failed to take advantage of earlier opportunities to make its case").

Second, even if the argument was properly raised, the Plaintiffs nevertheless fail to persuade that their position—that the characteristics of the two venues have no bearing on whether the two sets of residents are "similarly situated"—has any viable support. They cite not a single analogous case supporting their theory—likely because their argument is untenable. To the point, the Plaintiffs maintain they are similarly situated to the residents of downtown Miami because both populations are "subject to the same County laws and ordinances, policies and practices." (Pls.' Mot. at 9.) By that logic, however, residents of every single neighborhood in a given jurisdiction would qualify as similarly situated to residents of any other neighborhood, simply by virtue of their being located within the same jurisdiction, subject to the same laws and policies. This would obviate the need for any plaintiff seeking to set forth an equal-protection claim to show that his or her comparators from another neighborhood are actually similarly situated—a result that plainly does not comport with binding case law requiring that a plaintiff proffer a comparator who is "similarly situated in *all*," not just some, or even many, "material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019) (emphasis added).

Finally, the Plaintiffs insist that, even if the Court's focus on the venues, as opposed to the people, in the two neighborhoods was not improper, the Court "misconstrued Plaintiffs' allegations, drew inferences favoring Defendants, not Plaintiffs, and made findings that are contrary to actual facts." (Pls. Mot. at 10.) In support, however, the Plaintiffs rely wholly on facts they allege in a proposed amended complaint. While such facts could conceivably qualify as "new evidence," in support of reconsideration on the basis of that evidence, they cannot serve as a basis for establishing that the Court erred in its assessment or conclusions with respect to the initial complaint.

In sum, the Court is not persuaded that it erred in concluding that the Plaintiffs failed to allege facts showing they are similarly situated to the residents of downtown Miami.

### B. Allegations of Discriminatory Intent

The Plaintiffs also complain that the Court misapprehended the complaint's allegations regarding the County's discriminatory intent. In presenting their argument, however, the Plaintiffs largely either reargue points they previously made, or, again, raise arguments they could have raised, but didn't, in response to the Defendants' motion to dismiss. Further, the Plaintiffs, once again, improperly rely on allegations presented in their proposed amended complaint. Finally, to the extent the Plaintiffs actually identify what they allege as error in the Court's analysis, the Court finds they miss the mark.

For example, one of the Plaintiffs' allegations of error in the Court's order is that the Court misapprehended the connection between the Plaintiffs' allegations of historical background information and the Plaintiffs' current claims of discrimination. The Plaintiffs take issue with the Court's determination that much of the history chronicled in the complaint was untethered to the County's decision to hold the races in Miami Gardens. In support of their position—that the County's history of discrimination is both temporally and substantively tied to the County's decision—the Plaintiffs recite several instances of recent, disparate negative impacts on the Black community in Miami-Dade County, including higher rates of black voters' mail-in ballots' being rejected; disparities in the criminal-justice system within the County; higher rates of homelessness of the County's Black residents; and higher rates of poverty in Miami Gardens. (Pls.' Mot. at 15.) The Plaintiffs' logic, though, is flawed in multiple ways: disparate effects alone cannot establish discriminatory intent; there are no allegations linking these disparate effects to any discriminatory intent on behalf of the County itself; and there are no allegations even mildly linking these disparate effects to the County's specific decision regarding the siting of the races. *See Greater Birmingham Ministries v.*

*Sec'y of State for State of Alabama*, 992 F.3d 1299, 1324 (11th Cir. 2021) (noting that historical evidence that is "largely unconnected" to the challenged action does not strengthen a plaintiff's claim of discriminatory intent).

Similarly flawed is the Plaintiffs' contention that the "differential treatment" of the downtown Miami residents and the Miami Garden residents is, "standing alone," suggestive of discriminatory intent. (Pls.' Mot. at 18.) Again, disparate treatment is but one factor germane to the analysis: simply put, "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977).

Relatedly, the Plaintiffs' argument that the Court erred in failing to credit the Black Miami Gardens residents' viewing the County's decision as environmental racism is unavailing. The Miami Gardens residents' subjective perceptions that they are being discriminated against simply cannot supplant the Plaintiffs' obligation to allege concrete facts that plausibly support the County's actual discriminatory intent. *Roberson v. Alltel Info. Services*, 373 F.3d 647, 654 (5th Cir. 2004) (finding that one's "subjective belief" is "insufficient to create an inference of the defendants' discriminatory intent") (cleaned up).

Finally, much of the what the Plaintiffs argue in urging reconsideration are simply perfunctory conclusions, unsupported by any factual underpinnings. For instance, the Plaintiffs' cursory argument that "[m]oving the Race from predominantly White and Hispanic Downtown Miami to predominantly Black Miami Gardens results in a clear disparate racial impact that evinces discriminatory intent" (Pls.' Mot. at 14) falls far short of showing that the Court erred in finding the complaint failed to state a claim.

In brief, the Plaintiffs fail to meet their burden, in their motion for reconsideration, of establishing that the Court erred in concluding that the Plaintiffs failed to allege facts establishing the County's discriminatory intent. Accordingly, even if the Court found that the Plaintiffs successfully alleged that they were similarly situated, the complaint would still fail to state a claim.

### C. Newly Discovered Evidence

Finally, the Plaintiffs maintain they discovered new evidence after filing their complaint, and after the deadline to amend the pleadings had passed, that justifies the Court's reconsideration. After a thorough review, the Court finds the Plaintiffs' arguments are without merit.

First, the Plaintiffs do not explain, as they must, why much of this "newly discovered evidence" was previously unavailable to them. *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997). While the information they present might have been previously unknown to them, they fail to explain why

it was impossible for them to have discovered the information earlier. For example, regarding the zoning and permitting evidence, the Plaintiffs simply cite to facts apparently set forth in their proposed amended complaint, but fail to explain why this evidence was, despite their due diligence, previously unavailable. And, although the Plaintiffs proffer an excuse for their untimely submission of evidence regarding the City of Miami Gardens' acoustical engineering studies, the Court finds the proffer falls short. The Plaintiffs simply maintain that, despite filing public records requests with the City of Miami Gardens on October 28, 2019, and on March 31, May 15, and June 15, 2021, they did not receive the evidence about the study until July 13, 2021. (Pls.' Mot. at 4–5.) But this fails to establish that the evidence they now claim to be newly discovered was previously unavailable, especially in light of the opportunities for discovery the Plaintiffs have had since initiating their case.

Furthermore, even if the Plaintiffs did show unavailability, the evidence they present would not, in any event, alter the outcome of the Court's analysis. To start, the Plaintiffs point to purportedly new evidence showing that City of Miami Gardens officials were told by their engineering consultants that the acoustical study prepared for the Dolphins and F-1, which was submitted to the County, downplayed the level of noise occasioned by the race, falsely claiming it would be within acceptable levels. (Pls.' Mot. at 4–6.) The Plaintiffs fail, however, to explain how these facts would alter the Court's dismissal order. Notably, the Court previously accepted the complaint's allegations and plainly recognized, for the purposes of evaluating the motion to dismiss, that the race would "bring extreme noise . . . to residential areas," causing "harm to the residents' health as well as depriv[ing them] of quiet enjoyment of their property."[5] (Order at 13–14.) Without more, the Plaintiffs have failed to persuade that evidence regarding the City of Miami Gardens' (a non-party) knowledge of the noise issue would in any way reshape the Court's analysis.

---

[5] In their reply, the Plaintiffs characterize the Court as having merely acknowledged that the Plaintiffs were *concerned* about noise. (Pls.' Reply at 4.) This is simply inaccurate. Further, the Plaintiffs' portrayal of the Miami Gardens acoustical study as the "smoking gun"—showing that all the Defendants not only knew about the dangerous noise levels but also all falsely minimized them—is incompatible with the allegations in their complaint. The new evidence is merely duplicative of facts the Plaintiffs have previously alleged. For example, in their complaint, the Plaintiffs allege that the County's own auditor had issued a report, highlighting noise concerns and that hearing damage from a Formula One track was likely. (Compl. ¶¶ 108–9.) The complaint also highlights a *Miami Herald* article which reported that the race would result in noise that could lead to "permanent hearing damage." (*Id.* ¶ 115.) The Plaintiffs' late discovery of yet one more source decrying the extreme noise that will emanate from the race does not qualify as a basis for the Court to reconsider its order. This is especially so where the Plaintiffs fail to allege any facts establishing that anyone in particular at the County was ever even aware of the Miami Gardens study.

Similarly, the Plaintiffs' allegations that certain Defendants "engineered the passing of a Resolution by the City of Miami Gardens," requiring expeditious issuance of race-related permits and permissions, does not change anything either. The Plaintiffs fail to specifically tie this to any particular conclusion reached by the Court in its dismissal order. They also fail to allege any actual facts connecting Miami Gardens' resolution to any specific relevant action taken by the County or any other Defendant.

Finally, the Plaintiffs' position that new evidence shows that the zoning "criteria for Downtown Miami and Hard Rock Stadium [Miami Gardens] are the same" is flawed. (Pls. Mot. at 7.) As the Plaintiffs themselves frame it, although any part of the race held in the "outer stadium sub-district" would requiring city permitting (*id.*), racing inside stadium property would not (Compl. ¶ 148). In contrast, a permit would be required from the City of Miami for all aspects of a race held downtown. (Pls.' Mot. at 7.) The Plaintiffs' own presentation, then, shows that the permitting requirements for the two venues are clearly materially distinguishable.

In short, then, the Court finds the Plaintiffs' presentation regarding purportedly new evidence wholly unavailing.

### 3. The Court denies the Plaintiffs' request for leave to amend their complaint.

Lastly, the Plaintiffs insist, again, that the Court should allow them to file an amended complaint, maintaining that "[s]ince the filing of their Complaint, Plaintiffs have diligently continued their fact investigations"; and the Plaintiffs "have not delayed in asking for an amendment." (Pls.' Mot. at 20.) The Court finds both positions lacking.

As both parties acknowledge, where a party seeks leave to amend *after* the deadline to do so has passed, the movant must do more than argue leave is due under Rule 15(a). That is, the movant must also show "good cause" under Rule 16(b) in order to obtain the right to amend. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *See Sosa*, 133 F.3d at 1418. Thus, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (Ungaro, J.). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come

into play. *See* Fed. R. Civ. P. 15(a)(2). While the standard under Rule 15(a) is lenient, "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment." *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted).

Even if the Plaintiffs were able to satisfy the Rule 15(a) standard, the Court finds their attempt to show diligence lacking. As also addressed in the previous section, the Plaintiffs fail to establish that any of the new evidence they seek to present was not available to them before the expiration of the deadline to amend the pleadings.

The Court is also not persuaded by the district-court decisions the Plaintiffs rely on for the proposition that good cause under Rule 16 can be shown by an order of dismissal that is entered after the expiration of the deadline to amend. The cases they cite to from this district are readily distinguishable. In one, for example, the Court found good cause, in part, where a magistrate judge had advised the plaintiff, in a report and recommendation, recommending dismissal, that the plaintiff "should be permitted to file an amended complaint if . . . it can cure the pleading deficiencies identified in the foregoing analysis." *Emess Capital, LLC v. Rothstein*, 10-60882-CIV, 2012 WL 13001838, at *2 (S.D. Fla. May 2, 2012) (Lenard, J.). The Plaintiffs were given no similar leeway or signal here.

Another case the Plaintiffs cite is similarly inapt. *See Datto v. Florida Int'l Univ. Bd. of Trustees*, 1:20-CV-20360, 2020 WL 6544488 (S.D. Fla. Nov. 6, 2020) (Bloom, J.). In *Datto*, the Court afforded a pro se plaintiff generous accommodation and, in addition, noted (1) the motion seeking leave to amend was brought within one week of the defendant's motion to dismiss becoming ripe and before the Court had ruled on it; and (2) the defendant did not argue that the plaintiff had not been diligent nor did the Court find the plaintiff had been dilatory. *Id.* at *4. Here, in contrast, the Plaintiffs are represented by experienced counsel and waited until almost a month after the Court entered its order of dismissal to seek reconsideration of the Court's denial of their request for leave to amend. Further, here the Defendants argued, and the Court found, that Plaintiffs had not shown that, despite their diligence, they could not comply with the Court's deadline.

Finally, and importantly, previously, the Court explicitly warned the Plaintiffs not to await the Court's ruling on the Defendants' motion to dismiss before seeking leave to amend, specifically cautioning them that they "have a choice: they can stand on their pleadings and oppose the Defendants' motion to dismiss or they can address the issues raised by filing an amended complaint, prior to the deadline set by the Court." (Sched. Order, ECF No. 40, 1.) That

order was issued in March and, in the eight months since, the Plaintiffs never objected. Once again, the Plaintiffs fail to carry their burden of showing that, despite their diligence, compliance with the Court's deadline was impossible. This is especially so in light of the Eleventh Circuit's repeated rejection of "the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend." *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018).

### 4. Conclusion

For the foregoing reasons, the Plaintiffs' corrected motion for reconsideration and for leave to amend is **denied** in its entirety (**ECF No. 74**).[6]

Additionally, although the Court appreciates the efforts of the Florida State Conference and Miami-Dade Branch of the National Association for the Advancement of Colored People (together, the "NAACP") in seeking to submit an amici curiae brief (NAACP's Mot., ECF No. 67) to assist in the evaluation of the Plaintiffs' motion, the Court finds the focus of the endeavor misplaced. Rather than focusing on whether reconsideration of the Court's dismissal order is warranted, the NAACP's brief instead concentrates on whether the allegations in the Plaintiffs' proposed amended complaint suffice to set forth equal-protection violations. (*E.g.*, NAACP's Brief, ECF No. 67-1, 2 (expressing support for the "Plaintiffs' position that the First Amended Complaint alleges sufficient facts to support the claim s alleged) ("[T]he allegations in the First Amended Complaint . . . are sufficient to plausibly establish that Defendants' decision . . . was motivated by racial animus."), 11 ("The First Amended Complaint sufficiently alleges that the decision . . . was motivated by racial animus.").) Moreover, every citation in support of the NAACP's position is to the proposed amended complaint which the Plaintiffs have not been granted leave to file. Because the NAACP's brief is not directed to the relevant issues before the Court, the Court exercises its discretion not to accept it, thus **denying** their motion. (**ECF No. 67**.)

**Done and ordered**, in Miami, Florida, on December 8, 2021.

                                            Robert N. Scola, Jr.
                                            United States District Judge

---

[6] The Court also denies the Defendants' request for fees and costs, inserted at the end of their response to the Plaintiffs' motion, as procedurally improper and substantively lacking. (Defs.' Resp. at 13.)